# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:04CV53-3-V
# (5:96CR33-1-V)

| | |
|---|---|
| DANIEL E. KELLY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  **O R D E R** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, Or Correct Sentence under 28 U.S.C. § 2255 (Document No. 1 ); Respondent's Motion for Summary Judgment (Document No. 3); Petitioner's Response to Respondent's Motion for Summary Judgment (Document No. 7); and Petitioner's Motion to Amend (Document No.6).

For the reasons stated herein, Respondent's Motion for Summary Judgment will be granted, Petitioner's Motion to Amend is denied and Petitioner's Motion to Vacate will be denied and dismissed.

## I. PROCEDURAL HISTORY

The record reveals that Petitioner, Daniel E. Kelly, and his brother, Steven Kelly,[1] were indicted for violating 21 U.S.C. §§ 846 and 853. Count One charged the Kellys with conspiracy to possess with intent to distribute and distribute a quantity of cocaine and cocaine base, in violation

---

[1] The Court notes that Steven Kelly also filed a Motion to Vacate, Set Aside, Or Correct Sentence under 28 U.S.C. § 2255 which this Court has ruled on this same day. (See 5:04cv71).

1

of 21 U.S.C. § 846. Count Two named the Kellys, and related to property forfeiture, pursuant to 21 U.S.C. § 853. On January 30, 1997, the government filed a Notice of Intent to Seek Enhanced Penalties Pursuant to 21 U.S.C. §§ 841, 851 against each of the Kelleys. On March 17, 1997, the government filed a Supplemental Notice of Intent to Seek Enhanced Penalties Pursuant to 21 U.S.C. §§ 841, 851 against each of the Kellys. A jury trial began on March 18, 1997 [2] and ended on March 31, 1997, with convictions for both defendants for conspiracy to possess with intent to distribute cocaine, which began January 1, 1995 and continued to November 22, 1996. The jury returned a guilty verdict and this Court sentenced Petitioner to 360 months imprisonment.

Petitioner filed a notice of appeal on July 6, 1998 and his brother, Steven, filed a notice of appeal on July 7, 1998. The appeals were consolidated pursuant to a July 28, 1998 Order of the Clerk of the Fourth Circuit Court of Appeals. On appeal, Petitioner and his brother raised the following issues:

1. Defendants were entitled to judgments of acquittal because the evidence was insufficient to support the charge of conspiracy.

2. The Court erred in denying the defendants' motion for recusal; alternatively, the Court erred in conducting ex parte communications with the prosecutor during the trial in violation of the defendants' Sixth Amendment rights to assistance of counsel, Fifth Amendment rights to due process, and rights to fundamental fairness.

3. Defendants were denied their rights to a fair trial, due process of law, and fundamental

---

[2] On the day trial commenced, the Clerk of Court received a letter at the federal courthouse in Charlotte advising that a bomb would go off in the federal courthouse in Statesville unless the charges were dismissed against the Kellys. The judge and the prosecutor were informed of the threat, but neither the Kellys nor their attorneys nor jury members were informed. No bomb was found.

fairness where the Court refused to exclude pervasive and prejudicial evidence of an irrelevant marijuana case in Louisiana.

4. The Court erred in denying the defendants' motion for a mistrial when the prosecution violated the court's order that excluded conversations that were protected by the attorney-client privilege.

5. The Court erred in denying the defendants' motion for a mistrial where the prosecutor's closing argument to the jury unconstitutionally shifted the burden of proof to the defendants.

6. The agent's threats to witnesses - that if they did not testify for the government they would be indicted - denied the defendants due process of law, a fair trial, and fundamental fairness.

7. The Court erred in failing to instruct that the jury could not convict upon a mere showing of an illegal agreement with a government informant.

8. The Court erred in its calculation of the quantity of drugs attributable to each defendant.

On August 1, 2001, the court of Appeals issued an unpublished per curiam decision noting that "the Kellys raise numerous arguments on appeal. Although we address only their two principal arguments, we have also carefully considered their remaining contentions. Because we have concluded that their additional claims are clearly meritless, we do not discuss them further." United States v. Kelly, 16 Fed. Appx. 152, 156 (4th Cir. 2001) (unpublished.)

The Court of Appeals affirmed the Kelly's convictions, concluding that "the government presented ample evidence to support the jury verdict that the Kellys engaged in a conspiracy to possess cocaine with intent to distribute cocaine." Id. The Court of Appeals also concluded, in light of the decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000) and United States v. Promise, 255 F.3d 150 (4th Cir. 2001), which was decided during the pendency of the Kellys' appeal, that "the

plain error affecting the Kellys' substantial rights - failure to charge in the indictment the essential element of drug amount - 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'". Id. at 159. Accordingly, the Court of Appeals exercised its discretion to notice and correct the error. The Kelly's convictions were affirmed; their sentences were vacated and their cases remanded for resentencing. The Court of Appeals also noted that on remand the district court could consider the timeliness of the government's pre-trial notice filed pursuant to 21 U.S.C. § 851 (2000) that sought the enhanced statutory maximum sentence of 30 years under § 841(b)(1)(C) because of a prior drug conviction. Id. at 159.

The Court conducted a resentencing hearing on April 17, 2002. Petitioner was sentenced to 168 months imprisonment.[3] At the resentencing hearing, Petitioner attempted to re-open issues that had been decided at the first sentencing and also attempted to raise new issues. Petitioner filed a Motion to Recuse the undersigned, Motion for Judgment of Acquittal, Motion to Dismiss Indictment and for New trial, which were all denied.

Petitioner filed a notice of appeal on April 24, 2002. Again his appeal was consolidated with his brother's appeal by Order dated June 7, 2002. In an unpublished per curiam decision issued on April 21, 2003, the Court of Appeals affirmed the Kellys' convictions and sentences specifically holding:

1. "The district court did not plainly err in determining that Daniel's prior sentences should be counted separately."

2. "The district court did not err in determining that the § 851 notice delivered to Steven's attorney before jury selection was timely."

---

[3] Petitioner's brother, Steven Kelly, was resentenced to 262 months on April 23, 2002.

4

3. "[B]ecause the government attached a computer printout of Steven's Ohio criminal record, thereby establishing that he had a 1991 conviction for attempted aggravated drug trafficking for which he received an eighteen-month prison sentence, we conclude that this document provided sufficient notice to him as to the conviction to be relied upon. Moreover, the fact that the document was not titled an 'information' is not significant."

4. "We find no error in the district court's decision to apply the 2001 Guidelines Manual rather than the 1995 Guidelines Manual."

5. "The district court did not err in refusing to apply the 1995 Guidelines Manual on remand."

The Court of Appeals also noted the following:

> On remand, the Kellys sought to relitigate certain issues that had been decided at the first sentencing and to raise new issues. The district court correctly determined that all these issues were foreclosed by the mandate rule, because they had either been decided in the first appeal or waived because they were not raised on appeal.[4]

On October 20, 2003 the United States Supreme Court denied Petitioner's petition for writ of certiorari. On April 20, 2004, Petitioner filed the instant Motion to Vacate alleging that: 1) the Government violated its Brady obligation by not providing discovery concerning witness Harrington's drug involvement with Petitioner's unindicted co-conspirator, George Farrah: 2) the indictment was fatally defective under Apprendi v. New Jersey, 530 U.S. 466 (2000): and Petitioner's Sixth Amendment rights were violated by his trial lawyer's actual conflict of interest.

---

[4] These issues were [as follows]: the district court's refusal to recuse; drug type and quantity; weapon enhancement; role adjustment; obstruction of justice adjustment; denial of motion for acquittal or recalculation of sentence based on Chapman v. United States, 500 U.S. 453 (1991); denial of motion to dismiss indictment or for new trial based on Apprendi and United States v. Rhynes, 196 F.3d 1207 (4th Cir. 1999), vacated in part reh'g en banc, 218 F.3d 310 (4th Cir. 2000).

## II. ANALYSIS

### A. BRADY CLAIM

Petitioner alleges that the government violated Brady v. Maryland, 373 U.S. 83 (1963), by concealing impeachment evidence relating to witness James Harrington's drug activities with George Farrah, an unindicted co-conspirator in his criminal case.[5] More specifically, Petitioner states that "[a]ttorneys for the defendants requested precise Brady material from the government and documentation concerning Orlando Milian, James Harrington, George Farrah, Milton Albury and all persons involved with the investigation of the Kellys." (Motion to Vacate at 3.) Petitioner's defense attorney amended his request to include all documentation related or generated from said information. Petitioner asserts that despite this specific request, Harrington's drug involvement with George Farrah was not turned over to him. (Id.) Petitioner's claim fails both procedurally and on the merits.

#### 1. Procedural Default

Generally, claims that could have been, but were not raised on direct review are procedurally barred. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). Petitioner has filed two direct appeals relative to his conviction and sentence but has never raised a Brady claim for failure to provide exculpatory or impeachment evidence. In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause

---

[5] While Petitioner styles this argument as a violation pursuant to Brady v. Maryland, the argument Petitioner is making, that the prosecution withheld evidence tending to impeach government witness James Harrington, is more specifically a violation of Giglio v. United States, 405 U.S. 150 (1972).

and actual prejudice resulting from the errors complained of or that he is actually innocent.[6] See United States v. Mikalajunas, 186 F.3d 490, 492, 93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).

Cause means some impediment. United States v. Smith, 241 F.3d 546, 548 (7th Cir. 2001). The existence of cause for procedural default must turn on something external to the defense. Murray v. Carrier, 477 U.S. 478, 488 (1986). As set forth below, Petitioner has failed to carry his burden of establishing cause.

The cause asserted by petitioner for failing to raise this issue on direct appeal is that the information "was discovered after trial and sentencing" (Motion at ¶ 13.) However, in neither his Motion to Vacate nor his response to the Government's Motion for Summary Judgment does Petitioner specifically state why this information was not discoverable prior to the filing of the instant Motion to Vacate on April 20, 2004.[7] Rather, Petitioner asserts that the information which forms the basis of his Brady claim was discovered in 2003-2004 when witnesses, who Petitioner had been unable to locate, came forward. Petitioner also relies on information obtained from Freedom of Information Act requests which were "non-existent, until 2003-04."

The Court notes that Petitioner provides no specifics with respect to his attempts to locate the witnesses who came forward, but only states that these witnesses came forward in 2003-2004. These vague assertions about independent witnesses do not satisfy the cause required for overcoming procedural default. Petitioner also does not state why he could not have discovered this information

---

[6] Petitioner makes no claim of actual innocence.

[7] The Court notes that Petitioner's trial was in March 1997 and he was originally sentenced in June 1998.

from other sources such as federal trial transcripts from prior to Petitioner's arrest which "effectively resolve Harrington's massive drug involvement in various locations."[8] (Traverse at 3.) Petitioner makes no attempt to explain why these transcripts were not available to him prior to his appeal.

With respect to his Freedom of Information Act requests, Petitioner complains that he did not receive responses to such requests until 2003 - 2004, however, a review of the letters/requests for such information attached to his Motion to Vacate, reveals that such requests were not even made until December 2003 and early 2004 (See Motion to Vacate, Ex. A) . The burden is on Petitioner to establish cause for his procedural bar. Petitioner has not meet his burden in establishing cause for failing to raise this claim on direct appeal. Therefore, Petitioner has procedurally defaulted this claim.

**2. Materiality**

Even if Petitioner had not procedurally defaulted his Brady claim, it would still fail because the evidence Petitioner argues was withheld from him is not material. Brady and its progeny require the government to provide to the defendant all information in its possession which could tend to exculpate the defendant or could be useful for impeachment of any prosecution witness.[9] Brady v.

---

[8] The Court notes that to the extent such federal trial transcripts and other impeachment evidence exists, it is surprising that Petitioner's counsel did not locate such evidence in connection with a background investigation of Harrington prior to trial. Indeed, in May 2003, Petitioner retained Pretext Services Inc., a certified private investigative service, "to locate witnesses and former confidential informants and to search for unreleased documentation and exculpatory evidence, withheld from trial counsel." (Motion to Vacate at 4-5; Exhibit A.) However, this appears to be Petitioner's first attempt to investigate the background of government witnesses, particularly Harrington, from his trial.

[9] "The Brady rule does not apply if the evidence in question is available to the defendant from other sources, either directly or via investigation by a reasonable defendant." United States v. Brother Constr. Co. of Ohio, 219 F.3d 300, 316 (4th Cir. 2000). Based on Petitioner's ability to locate the impeaching evidence at issue once he hired a private investigator and filed Freedom

8

Maryland, U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154-55 (1972). In order to establish a Brady violation, a petitioner must demonstrate that: (1) the evidence was suppressed by the prosecution; (2) such evidence was favorable to the defendant, whether directly exculpatory or of impeachment value, and (3) it was material. See Spicer v. Roxbury Correctional Inst, 194 F.3d 547, 555 (4th Cir. 1999).

The Court will assume, without deciding, that Petitioner's claim satisfies the first two Brady requirements and turn to materiality. Evidence is material if there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. United States v. Bagley, 473 U.S. 667, 682 (1985). A "reasonable probability" is established when the failure to disclose the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). However, materiality is not established by the mere possibility that the withheld evidence may have influenced the jury." United States v. Palmer, 160 F.3d 474, 479 (8th Cir. 1998). Further, prosecutorial nondisclosure of exculpatory evidence does not assume unconstitutional dimensions unless the undisclosed evidence is "material . . . to guilt or to punishment . . . " Brady, 373 U.S. at 83.

Petitioner argues Harrington was the government's main witness against him and that Harrington (1) provided the background evidence for the investigation leading to his arrest in North Carolina; (2) facilitated meetings and telephone conversations with Petitioner that led to the reverse-sting; (3) included Milton Ashbury as a cocaine supplier; (4) instigated the plan for the conspiracy in North Carolina; (5) observed Richard Gregg using cocaine at a club in the presence of Petitioner;

---

of Information Act requests, it is highly likely that Petitioner's Giglio/Brady claim could be dismissed on this basis. However, because the Giglio information at issue is not material, the Court need not decide that precise issue.

9

and (6) analyzed recorded conversations for the jury, implicating the Kellys. (Motion to Vacate at 9). Petitioner contends that if he had access to "information concerning Harrington's history and depth of drug involvement," he could have discredited Harrington's testimony by showing the jury that his testimony was perjured and that he "mold[ed] his testimony to what he perceived as the government's needs." (Motion to Vacate at 11.) Further, Petitioner contends that he could have used the evidence to attack the "good faith and credibility" of the government's investigation (Motion to Vacate at 11), and that said evidence "would have substantiated the premise that the government was willing to use extreme and questionable tactics to achieve its goal of incapacitating the Kelly defendants" (Motion to Vacate at 12). Finally, Petitioner argues that if this information had been "revealed to the jury, [it] would have shattered the integrity of the Kelly's [sic] prosecution and 'could [have] reasonably . . . undermine[d] confidence in the verdict.'" (Motion to Vacate at 14.)

As an initial matter, it was clear from the testimony that Harrington was a felon[10] and had a past history of involvement with drugs.[11] Consequently, information concerning ongoing drug deals, while impeaching, would not have revealed an unexposed side of Harrington.

Moreover, while Petitioner argues that Harrington was an essential witness against the Kellys, the Court notes that Petitioner was not convicted solely on the basis of Harrington's testimony. Richard Gregg, a Florida attorney testified at trial. Mr. Gregg testified that he lived with Steven Kelly at a time when Steven Kelly was giving Gregg cocaine. (Trial Transcript, March 25, 1997, at 231.) During that time period, in 1995, Gregg saw Steven Kelly with between a quarter and

---

[10] Mr. Harrington's trial testimony revealed that he had been convicted of conspiracy to traffic in cocaine and aggravated robbery (Trial Transcripts at 112).

[11] Trial Transcript 6-8, 112-114).

half of a kilogram of cocaine on at least two different occasions. (Id. at 234-45). In February 1995, Gregg became part of a cocaine relationship between George Farrar a/k/a "Rico" and Steven Kelly. (Id. at 235-37). Gregg also testified that Daniel Kelly received $60,000 from Rico that Daniel Kelly used the money to buy cocaine, (Id. at 236-37), and that the Kellys had an ongoing drug relationship with Rico. (Id. at 238-47). Gregg further testified that during the fall of 1996 he was living in his parent's residence in North Carolina. Daniel Kelly called Gregg and asked to spend the night at Gregg's because Daniel and Steven Kelly were coming to North Carolina to do a drug deal. (Id. at 269.) In a subsequent phone conversation, Daniel Kelly explained that the deal involved two kilograms:

> As soon as he [Daniel Kelly] met the source and saw he had the two kilos, he was going to go outside to meet Steven, who would then come over, take the first kilo, give it to Daryl, who had it pre-sold in Boone for $25,000.
>
> Daryl would drive up, sell it, come back and then with the $25,000 give it to Steve, then would go back to Daniel, who would pay his source.
>
> And then the second kilo would be fronted to them, or Daryl would have some time to sell it and then get the rest of the money which would be their profit.

Id. at 271.

Applying the elements of a Brady violation to the facts of this instant case, the Court finds that this evidence is not material pursuant to Brady given that Petitioner has failed to demonstrate that the outcome of the trial would have been different if Harrington's drug involvement with Farrah had been examined in depth before the jury. Harrington was not the only source of evidence against Petitioner. See United States v. Ellis, 121 F.3d 908, 918 (4th Cir. 1997) (noting that courts do not ignore other evidence of guilt presented at trial in assessing materiality). Gregg also provided crucial

11

testimony against the Kellys. Indeed, Gregg's testimony corroborated much of Harrington's testimony. Furthermore, in the context of a sufficiency of the evidence claim, the Fourth Circuit explicitly stated that "[i]ndependent acts of both Kelly brothers corroborated Gregg's and Harrington's testimony . . . . [T]he government offered evidence that the Kellys engaged in other acts to further their drug conspiracy apart from the reverse-sting." Kelly, 16 Fed. Appx. 152, 156 (4th Cir. 2001). The Fourth Circuit concluded the record provided "ample evidence" to support the jury verdict. Given that Harrington's testimony was not the sole evidence against Petitioner and that Gregg's testimony corroborated Harrington's testimony, the evidence that Harrington was involved in drug activities with Farrah is not material in that it is not likely that the outcome of the case would have been different if the jury had been aware of Harrington's relationship with Farrah. Indeed, the Court has considered the impeachment evidence that Petitioner contends the prosecution withheld. That evidence does not put the case against Petitioner in "such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. at 435. Therefore, the evidence regarding Harrington's previous drug activities with George Farrah is not material and as such there was no Brady violation.

**B. CONFLICT OF INTEREST CLAIM - INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner claims his trial attorney, Paul Lazarus, was ineffective because of a conflict of interest. Petitioner claims that Mr. Lazarus was under a criminal investigation by the FBI for obstruction of justice, that he knew about such investigation and that the investigation affected his representation of Petitioner. Specifically, Petitioner argues that his counsel's defense strategy, especially relative to his cross-examination of Detective Michael D'Ambrosia, was affected by this circumstance. Petitioner contends that if he had been aware of the FBI investigation of his attorney,

he would have retained new counsel.

The Sixth Amendment right to counsel "is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759 (1970). The Supreme Court set forth the threshold requirements for establishing ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a petitioner must demonstrate: (1) that his attorney's representation was deficient, falling below an objectively reasonable performance and (2) that the deficient performance prejudiced the petitioner's case. Strickland, 466 U.S. at 687. In order to establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest. Cuyler v. Sullivan, 446 U.S. 335, 345-50 (1980); United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991). Conflicts of interest occur most often when an attorney represents more than one client; however, "a conflict may also exist between an attorney's private interests and those of the client." United States v. Magini, 973 F.2d 261, 263 (4th Cir. 1992). A defendant asserting a conflict of interest claim must establish that an actual conflict of interest existed and that it adversely affected counsel's performance." Id. (citing Cuyler, 446 U.S. at 350.) In order to establish an adverse effect, petitioner must:(1) "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued," (2) "show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision," and (3) "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens v. Taylor, 240 F.3d 348, 360 (4th Cir. 2001).

In response to Petitioner's allegations, the government submitted an affidavit of Mr. Lazarus

in which he states that he had no knowledge of the FBI's investigation of him until he was arrested on June 10, 1997, almost three months after the Kellys' trial ended.[12] Mr. Lazarus included documentation establishing lack of knowledge of this investigation. Additionally, Petitioner attached as an exhibit to his §2255 Motion a copy of the docket proceedings in <u>United States v. Velaquez</u>, case number 97CR0216, Middle District of Florida, showing that Paul Lazarus was indicted on June 5, 1997, for violation so 18 U.S.C. § 371 and 1503, that the indictment was sealed and that Mr. Lazarus was arrested on June 10, 1997. Petitioner also attached as an exhibit to his motion a copy of the docket proceedings in <u>USA v. Lazarus</u>, case number 1:97m2978-0, Middle District of Florida, showing that Paul Lazarus was arrested on June 10, 1997, Based upon these facts, Petitioner has failed to establish that Mr. Lazarus was aware of the investigation during the trial and consequently has failed to show a conflict of interest relative to the FBI investigation and that a conflict existed between his attorney's private interest and those of Petitioner. Consequently, he also has not established that a conflict adversely affected his counsel's performance in representing him.

Moreover, the Court has reviewed the record in the instant case, including trial transcripts from March 17, 1997 through March 31, 1997, and such record indicates that Mr. Lazarus was a zealous advocate for the Petitioner's interests and provided effective assistance of counsel consistent with the performance of an attorney without a conflict of interest.. Petitioner has failed to meet his burden. Therefore, his allegation of ineffective assistance of counsel based on a conflict of interest is without merit and is denied.

---

[12] Petitioner's counsel argues that this is in conflict to statements made by Mr. Lazarus to both Petitioner and his brother as well as family members that he could not handle the Kellys' appeal due to problems he was involved in. Even if Mr. Lazarus made these comments regarding his inability to file an appeal on behalf of the Kellys, such a statement falls far short of establishing ineffective assistance of counsel at trial due to a conflict of interest.

**C. FATALLY DEFECTIVE INDICTMENT**

Petitioner alleges that the indictment was defective pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000) and, therefore, his conviction was "obtained in violation of the constitution and the laws of the United States."

Petitioner's present claim of defective indictment is the same argument submitted in support of is earlier motion to dismiss the indictment. (See Document No. 138; 5:04cr53). This Court denied the motion to dismiss the indictment and the motion for a new trial at Petitioner's resetencing on April 17, 2002. Thereafter, the Fourth Circuit Court of Appeals specifically addressed the motion to dismiss the indictment in its unpublished per curiam opinion issued on April 21, 2003:

> On remand, the Kellys sought to relitigate certain issues that had been decided at the first sentencing and to raise new issues. The district court correctly determined that all these issues were foreclosed by the mandate rule, because they had either been decided in the first appeal or waived because they were not raised on appeal. [FN3].
>
> > FN3. These issues were . . . denial of motion to dismiss indictment or for new trial based on *Apprendi* and *United States v. Rhynes*, 196 F.3d 1207 (4th Cir. 1999), *vacated in part on reh'g en banc,* 218 F.3d 310 (4th Cir. 2000).

United States v. Kelly, 64 Fed. Appx. 365 (4th Cir. 2003).

The law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Issues previously decided on direct appeal cannot be recast in the from of a § 2255 motion. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under Section 2255."). Because this issue was decided adversely to Petitioner on direct appeal, his claim is not cognizable

15

under 28 U.S.C. § 2255.

**D. MOTION TO SUPPLEMENT/AMEND**

On August 18, 2004, Petitioner filed a motion to amend seeking to add a claim based upon the Supreme Court's holding in Blakely v. Washington, 542 U.S. 296 (2004). Specifically, Petitioner argued that his sentence did not comply with the Sixth Amendment and therefore his sentence is constitutionally invalid.

Federal Rule of Civil Procedure 15(a) provides, "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given where justice so requires." Generally, under Rule 15(a) leave to amend shall be freely given, absent bad faith, undue prejudice to the opposing party, or futility of the amendment. See Forman v. Davis, 371 U.S. 178, 182-83 (1962); Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980).

Petitioner's conviction and sentence became final on or about October 20, 2003 when the Supreme Court denied Petitioner's writ of certiorari (See 5:96c333, Document No. 165.) Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct 738 (2005) were decided after Petitioner's conviction and sentence, therefore in order to impact his sentence, these cases would have to be determined to be retroactive on collateral review. The Fourth Circuit, however, has specifically held that the rule announced in Booker and Blakely was not a watershed rule warranting retroactive application. United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005) (criminal defendant unable to raise Blakely or Booker claim for the first time in § 2255 petition when judgment of conviction became final before Supreme Court decided Booker). Consequently,

16

Petitioner's claim based upon <u>Blakely</u> would be dismissed and therefore his Motion for Leave to Amend is denied as futile.

### III. ORDER

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Petitioner's Motion for Leave to Amend (Document No. 6) is DENIED;

2. Respondent's Motion for Summary Judgment (Document No. 3.) is GRANTED; and

3. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is DISMISSED (Document No. 1).

**SO ORDERED**.

Signed: November 5, 2007

Richard L. Voorhees
United States District Judge